BROADNAX v. UNITED ENGINEERING & CONTRACTING CO.

(Circuit Court, S. D. New York. March 3, 1904.)

1. SALES—MANUFACTURED ARTICLES--BREACH OF CONTRACT—DAMAGES.

Where, in an action for breach of contract to purchase granite, it appeared that the granite was to be furnished according to dimensions specified in advance, and was to be of a particular kind from certain quarries, the blocks should be regarded as articles manufactured for the purpose demanded, so that the damages should be considered with reference to the cost of production, and not to market value.

2. SAME—VALUE OF MATERIAL RETAINED BY SELLER.

Where, in an action for breach of a contract to purchase dimension granite, no allusion was made at the trial to the value of granite left in the quarry that would have been removed if the contract had been performed, a verdict in favor of plaintiff would not be set aside on the ground that the value of such granite should have been deducted from plaintiff's damages.

3. SAME—MORTAR JOINTS.

Where, in an action for breach of a contract to purchase granite, it appeared that the granite to be furnished would have been in excess of the dressed blocks in place, measured, and equal or exceed the amounts taken up by the mortar joints in the work, a verdict in favor of plaintiff would not be set aside on the ground that such joints were included in the measurement.

4. SAME—RUBBLE BACKING.

In an action for breach of a contract to purchase dimension granite for bridge approaches, evidence reviewed, and *held* insufficient to authorize an allowance for rubble backing as dimension granite to be furnished under the contract.

At Law.

Henry H. Bowman, for plaintiff.
L. Laflin Kellogg, for defendant.

WHEELER, District Judge. The jury has well found that the defendant agreed to take from, and pay for to, Goss & Small, as-

signors to the plaintiff, "all the dimension granite required in the construction of the New East River Bridge approaches," "to be in accordance with the specifications and acceptable to the engineer," and "to be Crotch Island granite from the quarries of Goss & Small and John L. Goss," in Maine; and that the defendant broke the contract; and that it deprived them of the profits of furnishing 8,059 cubic yards at $2.415 per cubic yard, amounting to $19,422.19. The defendant has moved for a new trial for not confining the damages to the difference between the market value and the contract price, and for excessive damages according to the rule adopted in not allowing the value of the granite saved in place of the quarries in computing profits, and by allowing for rubble backing as dimension granite to be furnished, and including mortar joints.

The granite would have to be furnished according to dimensions specified in advance, and, as it was to be of a particular kind, from certain quarries, the blocks would be articles manufactured for that purpose, and not such as would have general market value. The damages would therefore have reference to the cost of production, and not to any market value.

The granite left in the quarry that would have been removed if the contract had been performed would, of course, have some value, near or remote, but more or less according to the limit of supply. This may have been so great that profits would be almost wholly in the chance of getting out at remunerative prices, and not in the sale of the stone. The subject of profits in quarrying and furnishing the stone at the agreed price was carefully gone over at the trial by evidence and by examination of items, and, if the value of the rock in place would have been material, there was ample opportunity to make it appear. As no allusion was made to it, it must be presumed not to have been thought material. The verdict should not be disturbed for what was at most a mere oversight, not made to appear to have been or thought to have been or any consequence.

The amount included in mortar joints was shown to be very small. The granite to be furnished would have been in excess of the dressed blocks in place measured, and perhaps enough so to make up, or more than make up, for the joints. As much was made of this as either party appeared to desire, and no sufficient reason for disturbing the verdict is made to appear on that account.

As the right of recovery depends upon the validity of the contract and extent of the breach, and not upon any delivery or acceptance under it, the extent of the breach should clearly and fairly be made to appear as a foundation of the right. The quantity of dimension granite needed was what the plaintiff's assignors lost by the breach of the right of supplying. The testimony as to this came from the assistant engineer in charge and a contractor concerned in supplying the stone that took the place of what was contracted for. The assistant engineer testified:

"Q. What do you call 'dimension granite?' A. Dimension granite is stone which is cut to dimensions which are known in advance of the cutting of the stone. Q. What is the distinction, or what other kind of granite is there? A. There is rubble. Q. Is it a fact that what is called 'backing' in this bridge is composed of rubble? A. In the approaches, yes. Q. What is backing? A.

Backing is the part of the wall which does not appear on the front. Q. Do you know what the quantity in cubic yards of backing in that wall is? A. Not accurately. Q. Do you know it approximately? A. Yes. Q. What is it approximately? A. It would be 3,180 yards."

The contractor excluded the stretchers and headers of the front courses, but his cross-examination gave ground for including them. The further examination of the assistant engineer was to the apparent effect that these stretchers and headers should be included, but left the backing doubtful. The stretchers appear to have had required dimensions in all three ways—length, breadth, and thickness—but the backing only in thickness. At the trial the evidence seemed sufficient as to the backing to be submitted to the jury. On this review it does not appear to have been adequate to support the finding. The verdict should, in this view, be set aside now, unless that part is obviated; and the plaintiff may prefer to cure it by remission, and should be granted that opportunity. The amount is a mere matter of computation. It is $7,679.70.

If the plaintiff remits $7,679.70 of the verdict within 20 days, let the motion be overruled, and judgment entered on the remainder; if not, the motion is granted.